# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 13-07546-JW |
| | Chapter 13 |
| Dale Harvey Wicker and Joyce Fulmer Wicker, | **ORDER** |
| Debtor(s). | |

This matter is before the Court on the Objection to Exemption filed by the Chapter 13 Trustee ("Trustee"). Dale Harvey Wicker and Joyce Fulmer Wicker ("Debtors") filed a response to the Objection. The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Pursuant to Fed. R. Civ. P. 52, which is made applicable to contested matters by Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law:[1]

## FINDINGS OF FACT

1. On December 21, 2013, Debtors commenced this case by filing a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

2. On January 4, 2014, Debtors filed their Schedule C, which listed property Debtors claimed as exempt, including the property described as "Debtors Residence – 133 Sandtrap Drive, Newberry, SC 29108, Newberry County, (4) Bedroom house, TMS#(283-12), Tax Appraisal Value ($138,500)" ("Property"). Debtors claimed an exemption in the total amount of $104,390.29 ($52,195.15 for Mr. Wicker and $52,195.15 for Mrs. Wicker) for the Property pursuant to S.C. Code Ann § 15-41-

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of fact, they are so adopted.

30(A)(1). The Property is listed on Schedule A as being jointly held, with a notation that "Property is joint through equitable interest to the wife, wife is on mortgage entered February 28, 1992 and mortgage is attached." Debtors assert that the Property is presently worth $120,000 and that BB&T holds a mortgage in the amount of $19,509.71,[2] which is secured by the Property.

3. All debts except for a student loan in Ms. Wicker's name are listed in the Schedules as joint debts.

4. The Trustee filed an Objection to Exemption on January 16, 2014, asserting that the exemption should be disallowed on the grounds that the wife has claimed an exemption in property in which she appears to have no interest. The Trustee asserts that the value of the real estate is $138,500.00.

5. At the hearing on the Objection, Mrs. Wicker presented the following testimony and evidence in support of her claim that she has an equitable interest in the Property:

    a. Mr. Wicker inherited the Property in or around 1979.

    b. In 1983, Debtors were married and Mrs. Wicker began residing in the Property.

    c. In 1992, Debtors had their first child and obtained a loan for $34,500 to make improvements to the Property to accommodate their growing family. The lender required both Debtors to sign the note and mortgage for this loan ("1992 Mortgage"). The property description in the 1992 Mortgage contains a derivation clause which identifies the Property as "being the identical land conveyed to Dale H. Wicker and

---

[2] BB&T filed a proof of claim in the amount of $15,208.41.

2

Joyce F. Wicker by deed of Rachel W. Wicker, dated August 18, 1978 and recorded August 21, 1978 in Deed Book 155 at page 89." The proceeds from the 1992 Mortgage were used to improve the Property and increase its value.

d. In 1993, Debtors obtained a second mortgage line of credit ("Line of Credit") for approximately $15,000 to make further improvements to the Property. Both Debtors signed the note, but the mortgage was only signed by Mr. Wicker. The property description in that mortgage also contains a derivation clause which identifies the Property as "being the identical land conveyed to Dale H. Wicker and Joyce F. Wicker by deed of Rachel W. Wicker, dated August 18, 1978 and recorded August 21, 1978 in Deed Book 155 at page 89." The proceeds of the Line of Credit were used to improve the Property and increase its value.

e. In 1996, Mrs. Wicker personally inherited $16,000, which was used to add a bedroom and bathroom to the house on the Property. The addition was needed because Debtors adopted their second child in 1996.

f. In 2006, the 1992 Mortgage was satisfied.

g. Mrs. Wicker testified that until 2013, she believed she had a one-half ownership interest in the Property based on earlier mortgage transactions and according to Debtors' intent.

3

    h. Mrs. Wicker worked as a dental hygienist during the course of their marriage from 1983 until 2010, when she was laid off. Her wages were used, among other things, to make payments on the 1992 Mortgage and the Line of Credit and to maintain and improve the Property.

## **CONCLUSIONS OF LAW**

Mrs. Wicker claims an exemption in the Property pursuant to S.C. Code Ann. § 15-41-30(A)(1), which provides:

> (A) The following real and personal property of a debtor domiciled in this State is exempt from attachment, levy, and sale under any mesne or final process issued by a court or bankruptcy proceeding:
>
> (1) The debtor's aggregate interest, not to exceed fifty thousand dollars in value,[3] in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor, except that the aggregate value of multiple homestead exemptions allowable with respect to a single living unit may not exceed one hundred thousand dollars. If there are multiple owners of such a living unit exempt as a homestead, the value of the exemption of each individual owner may not exceed his fractional portion of one hundred thousand dollars.

The language of the statute requires a debtor to have an "interest" in the subject property but does not appear to require a deeded interest in real property. It has been held that a debtor must have an ownership interest in real property to claim an exemption. See In re Scotti, 456 B.R. 760 (Bankr. D.S.C. 2011) ("[T]o be entitled to a homestead exemption, a debtor must have an ownership interest in the property he seeks to exempt.") Furthermore, courts have held that something more than a possessory, future, or potential

---

[3] The amount of the exemption which may be claimed has been adjusted for inflation and is presently $58,225, and the aggregate value of multiple homestead exemptions allowable has likewise been adjusted to $116,450.

4

ownership interest is needed.[4]  See In re Franklin, C/A No. 12-03834-HB, slip op. at 4 (Bankr. D.S.C. 2012) (citing Gibbs v. Hunter, 99 S.C. 410, 83 S.E. 606 (1914); In re Scotti, 456 B.R. 760 (Bankr. D.S.C. 2011); In re Asghar, 1997 WL 34816024, at *2 (Bankr. E.D. Va. Feb. 11, 1997)).  Since state law governs the nature and extent of a debtor's interest in property, South Carolina law must be applied to determine the extent of Mrs. Wicker's ownership interest, if any, in the Property.  Butner v. United States, 440 U.S. 48, 99 S.Ct. 914, (1979).

> I.     *Homestead Exemption for Equitable Ownership Interest*

Mrs. Wicker claims that the Property, which has been her residence and home to Debtors' family since 1983, has been significantly improved due to her financial contributions, resulting in a substantial increase in the Property's value.  It was her understanding that the Property was titled in her name, as indicated by her participation in various mortgage transactions over more than 20 years.  Based upon these factors, Mrs. Wicker asserts an equitable interest in the Property which should qualify as a basis for her claim of a homestead exemption.  The issue of whether a homestead exemption may be claimed for an equitable interest in property has not been expressly decided under South Carolina law, but the South Carolina Supreme Court has stated that "[w]e do not see why there may not be homestead in lands held only by an equitable title." Munro v. Jeter, 24 S.C. 29 (1885).  Courts in other jurisdictions have allowed homestead

---

[4] There is no dispute that Debtors use the Property as their residence and are in possession of it.

5

exemptions to be claimed for equitable ownership interests in property.[5] See e.g., In re Brown, 408 B.R. 262 (Bankr. D.Minn. 2009) (allowing debtor to claim a homestead exemption for property titled solely in his domestic partner's name, finding he had an equitable ownership interest by virtue of a constructive trust based on his financial contributions over a ten-year period and the legal title holder's express belief and agreement that they owned the property together as tenants in common); see also George L. Haskins, Homestead Exemptions, 63 Harv. L. Rev. 1289, 1295 (1950) ("[I]t is an almost universal rule that a homestead may be claimed in land in which the claimant has only an equitable interest."). According to the plain meaning of the state statute and considering that homestead exemptions are to be liberally construed in the debtor's favor,[6] the Court finds that a claim for a homestead exemption for an equitable ownership interest in property is allowed under South Carolina law.

The Trustee argues that Mrs. Wicker cannot claim an exemption in this case, relying on the two prior orders of other judges of this Court, In re Scotti, 456 B.R. 760, 764 (Bankr. D.S.C. 2011) and In re Franklin, C/A No 12-03834, slip op. (Bankr. D.S.C. Dec. 21, 2012). However, as stated below, these decisions are inapplicable to this case, as neither involved a claim for a homestead exemption based upon an equitable

---

[5] See also In re Lindquist, 395 B.R. 707 (Bankr. D. Or. 2008) (allowing a homestead exemption to be claimed by both husband and wife where husband had conveyed his interest in property to wife to facilitate a refinance prior to filing bankruptcy); Aronson v. Aronson, 81 So.3d 515 (Fla. Ct. App. 2012) (stating that to claim a homestead exemption, "the estate owned need not be fee simple, but may be any type of interest in the property, legal or equitable, so long as the interest is a possessory interest"); In re Kester, 493 F.3d 1208 (10th Cir. 2007) ("An equitable interest is sufficient to claim the homestead exemption as long as the claimant occupies the real estate."); In re Cadengo, 370 B.R. 681 (Bankr. S.D.Tex. 2007) (stating that any sort of title, whether legal or equitable, will support a homestead claim); In re Hutchins, 306 B.R. 82 (Bankr. D.Vt. 2004) ("[I]t is equally well established under both this Court's jurisprudence and Vermont law that equitable interests in a homestead should be protected.").

[6] In re Franklin, C/A No 12-03834, slip op. (Bankr. D.S.C. Dec. 21, 2012) (citing In re Shaffer, 78 B.R. 783, 784 (Bankr. D.S.C. 1987)).

ownership interest in property under either of the equitable principles of a resulting trust or constructive trust.

In <u>Scotti</u>, a judicial lien avoidance case, the debtors argued that the debtor-husband's mere possessory interest in the home was sufficient to entitle him to an exemption in the property and that the debtor-husband could claim the exemption as a dependent of the titleholder, the debtor-wife. The bankruptcy court found that a mere possessory interest or potential equitable distribution interest (from a state law divorce proceeding) was an insufficient interest to entitle the debtor-husband to a homestead exemption.[7] The arguments presented by the debtors in <u>Scotti</u> have not been asserted by Debtors in this case. Moreover, Mrs. Wicker claims a present equitable ownership interest in the Property, not an expectancy of an equitable interest arising in a divorce.

In <u>Franklin</u>, the bankruptcy court considered whether a debtor could claim a homestead exemption for real property that had been transferred to a revocable trust. The issue was whether the debtor continued to have an interest in the real property that was the *res* of the trust. The court considered the terms of the trust document and concluded that the debtor only had rights and interests in the trust, not the real property itself. Since an express trust is not at issue in this case, that holding is unpersuasive.

II.     *Resulting Trust*

Mrs. Wicker initially asserts that she has an equitable interest through a resulting trust, as recognized by this Court in <u>In re Rivers-Jones</u>, C/A No. 07-02607-JW, slip op. at *10 (Bankr. D.S.C. Sept. 4, 2007). A resulting trust is an equitable remedy designed to

---

[7] The court also rejected the argument that the debtor-husband could claim the exemption as a dependent of the debtor-wife. The court noted that the purpose of the inclusion of the word "dependent" in the statute was to exempt the property interest of the debtor if the debtor or a dependent of the debtor uses the property, not to increase the amount of the exemption available to the debtor.

effectuate the intent of the parties in certain situations where one party pays for property, in whole or in part, that for a different reason is titled in the name of another. Bowen v. Bowen, 352 S.C. 494, 499 (S.C. 2003). Under South Carolina law, "the general rule is that when real estate is conveyed to one person and the consideration paid by another, it is presumed that the party who pays the purchase money intended a benefit to himself, and accordingly, a resulting trust is raised in his behalf." Id. However, when the conveyance is to a spouse or a child, this presumption does not arise, and the conveyance is instead presumed to have been intended as a gift. Id. This presumption may be rebutted by parol evidence or circumstances showing a contrary intention. Id.

In this case, the Property was acquired by Mr. Wicker prior to his marriage to Mrs. Wicker. There was no transfer of consideration by Mrs. Wicker in connection with the conveyance of the Property to Mr. Wicker. A resulting trust must arise, if at all, at the time of the acquisition of the property. Wilson v. Wilson, 241 S.E.2d 566, 568 (S.C. 1978) ("In order for a resulting trust to arise, such must arise, if at all, at the time the purchase is made. The funds must then, or prior thereto, be advanced and invested. A trust will not result from funds subsequently furnished.") (quoting Hodges v. Hodges, 144 S.E.2d 816, 819-20 (S.C. 1963)). Therefore, Mrs. Wicker's contributions to the Property several years after its acquisition by Mr. Wicker could not give rise to a resulting trust.

### III.    Constructive Trust

Since this Court is guided by equitable doctrines and principles, the Court will also consider whether Mrs. Wicker has an interest in the Property by virtue of a constructive trust. See Young v. U.S., 535 U.S. 43 (2002) (noting that bankruptcy courts

8

are courts of equity and apply the principles and rules of equity jurisprudence); Regions Bank v. Wingard Properties, Inc., 715 S.E.2d 348 (S.C. Ct. App. 2011) (noting that equitable maxims offer guidance in equitable cases).

As stated by the South Carolina Supreme Court in Carolina Park Associates, LLC v. Marino, "a constructive trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by the one holding legal title...." 732 S.E.2d 876 (2012) (citing Lollis v. Lollis, 354 S.E2d 559, 561 (S.C. 1987). It is a "flexible equitable remedy whose enforcement is subject to the equitable discretion of the trial court." Hale v. Finn, 694 S.E. 2d 51, 57 (S.C. Ct. App. 2010). While a constructive trust is often considered in instances of fraud, bad faith, and violation of fiduciary duty, actual fraud is not necessary to establish a constructive trust. City of Charleston, S.C. v. Hotels.com, 520 F.Supp.2d 757 (D.S.C. 2007). A mistake of fact has been held to be sufficient grounds for imposing a constructive trust. See Bank of Williston v. Alderman, 91 S.E. 296 (S.C. 1917) ("By the well-settled doctrines of equity, a constructive trust arises whenever one party has obtained money, which does not equitably belong to him, and which he cannot in good conscience retain or withhold from another, who is beneficially entitled to it; as for example, when money has been paid by accident, *mistake of fact*, or fraud....") (emphasis added); Gordon v. Busbee, 723 S.E.2d 822 (S.C. Ct. App. 2012) (stating that a constructive trust may be imposed in circumstances where money has been paid by mistake of fact); In re Thames, 21 B.R. 704, 707 (Bankr. D.S.C. 1981) (concluding the scope of a constructive trust under South Carolina law was broad enough to give a wife equitable ownership of property mistakenly titled in her husband's name only, where joint funds were used to purchase

9

the property and make mortgage payments). "The forms and varieties of constructive trusts are practically without limit, such trusts being raised, broadly speaking, whenever necessary to prevent injustice." In re Thames, 21 B.R. 704, 707 (Bankr. D.S.C. 1981) (Davis, J.) (quoting Dominick v. Rhodes, 24 S.E.2d1 68, 172-73 (S.C. 1943)). A constructive trust may even be imposed against an innocent party in order to protect the equitable rights of those who have suffered the wrong. McNair v. Rainsford, 499 S.E.2d 488, 502 (S.C. App. 1998) (noting that "the sweep of unjust enrichment is broad enough so that a constructive trust may also be imposed against an innocent party, provided that the innocent party would be unjustly enriched vis-à-vis the plaintiff.").

The Court finds instructive Judge Davis's opinion in In re Thames. In that case, the bankruptcy court held that a wife's payment of part of a purchase price and her contributions to the making of mortgage payments over a five- year period entitled her to equitable ownership of property mistakenly titled only in her husband's name under both resulting trust and constructive trust theories. The court found that the mistake in title, which resulted in an inequity to the wife, was sufficient to establish a constructive trust under South Carolina law. Thames, 21 B.R. at 707. While the facts in this case do not establish a resulting trust, as discussed above, because Mrs. Wicker's funds were not used to acquire the Property, it appears that a constructive trust may be imposed based on mistake in fact grounds.

Prior to and at the time she used her $16,000 personal inheritance to fund improvements to the Property, Mrs. Wicker testified that she and her husband believed she had a one-half interest in the Property. Her testimony indicated that she used her inheritance money to pay for improvements in reliance upon her belief that she had an

10

ownership interest in the property. She testified that they did not learn that the Property was titled solely in Mr. Wicker's name until 2013, when they contacted an attorney to file this bankruptcy case.

The evidence in the record supports her testimony that she and her husband mistakenly believed she had a one-half interest in the Property at least as early as 1992. In 1992, both she and Mr. Wicker signed a mortgage encumbering their interests in the Property. The 1992 Mortgage, which was signed by Mrs. Wicker as a Borrower, provides that the "Borrower covenants that the Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property." In making the loan, the bank appears to have required Mrs. Wicker to execute the mortgage as an interest holder in the Property. In addition, the property description in the 1992 Mortgage includes a derivation clause identifying the Property as "being the identical land conveyed to Dale H. Wicker and Joyce F. Wicker by deed of Rachel W. Wicker, dated August 18, 1978 and recorded August 21, 1978 in Deed Book 155 at page 89." Additionally, in 1993, the Debtors obtained the Line of Credit on the Property. While the mortgage for the Line of Credit was signed only by Mr. Wicker, the mortgage incorporated the same information indicating Mrs. Wicker was a title holder on the Property.

There is no question that the improvements made to the Property as a result of Mrs. Wicker's $16,000 contribution, the 1992 Mortgage, and the Line of Credit increased the value of the Property by increasing the size and quality of the residence on that Property. Mrs. Wicker also contributed to the monthly mortgage payments for the 1992 Mortgage from 1992 until it was satisfied in 2006 and the Line of Credit from 1993 until

she was laid off in 2010. The uncontroverted evidence before the Court shows that Mrs. Wicker contributed money to raise the value of the Property because she believed she had an ownership interest in it.[8] Her testimony regarding the mistake as to the title to the Property was clear and convincing. Under these circumstances, the Court finds that Mrs. Wicker has an equitable ownership interest in the Property by virtue of a constructive trust and that she is entitled to claim a homestead exemption for this interest.

## CONCLUSION

Based on the foregoing, the Trustee's objection to exemption is overruled.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**04/11/2014**



*John E Waites*

US Bankruptcy Judge
District of South Carolina

Entered: 04/11/2014

---

[8] The evidence does not indicate that Mrs. Wicker intended her contributions as a gift to Mr. Wicker. Mr. Wicker admitted Mrs. Wicker's equitable interest in the Schedules filed in his case and he was present during her testimony and did not offer contradictory testimony or evidence.

12